## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

JAMES LOUIS RIDENOUR,     )
                                        )
                        Plaintiff,     )
     vs.                           )          4:06-cv-123-JDT-WGH
                                          )
HARRISON COUNTY SHERIFF'S,     )
     DEPARTMENT,              )
                                          )
                      Defendant.     )

### Entry Granting Motion for Summary Judgment

For the reasons explained in this Entry, the defendant's motion for summary judgment must be **granted** on the plaintiff's retaliation claim.

### I. Background

Plaintiff James L. Ridenour ("Ridenour") alleges that his former employer, the Harrison County Sheriff's Department (the "Sheriff's Department"), retaliated against him for filing an EEOC complaint and/or participating in an EEOC investigation, in violation of Title VII of the Civil Rights Act of 1964.

The Sheriff's Department seeks resolution of this complaint through the entry of summary judgment.[1] "Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (quoting Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

---

[1]Ridenour brings this action against the "Harrison County Sheriff's." The Sheriff's Department alleges that there is no such entity and to the extent that Ridenour intended to sue the "Harrison County Sheriff's Department" that entity is also not capable of being sued because it has no separate corporate existence. Instead, the Sheriff's Department argues that the proper entity for suit is either the Sheriff, in his official capacity, or any deputy in his official capacity.

    The Sheriff's Department's argument is flawed for two reasons. First, the Sheriff's Department is capable of being sued as a separate entity. See *Weatherholt v. Spencer County*, 639 N.E.2d 354, 357 n.2 ("However, the sheriff is not a representative of the county but he holds a separate office created by the Indiana Constitution." *Id.* (citing IND. CONST. ART. 6, § 2, *Carver v. Crawford,* 564 N.E.2d 330, 334 (Ind.Ct.App. 1990)). Second, the Sheriff's Department was Ridenour's employer and is thus the proper defendant in this Title VII action. *See Walker v. Marion County Sheriff's Department*, 132 F.3d 37 (7th Cir. 1997) (affirming the district court's dismissal of plaintiff's Title VII claim against all the defendants except for the Marion County Sheriff's Department on the grounds that only the Sheriff's Department was the "employer," and thus a proper defendant). It is clear from the parties' briefings that there has been no confusion that the Harrison County Sheriff's Department is the defendant in this action. Dismissal based on this asserted error, which can be traced back to the right to sue letter, is not warranted.

## II. Discussion

### A. Findings of Fact

In 1999, Ridenour took a job as a corrections officer with the Harrison County Sheriff's Department on the third shift.  After a few months, he left the Sheriff's Department to work for another employer, but returned after a couple of months when he was offered a job on the second shift. Ridenour worked the second shift for more than a year, during which time he acquired the rank of Sergeant, before he was promoted to jail commander or captain.  Ridenour served as the jail commander (a first shift position) for nine months, when in November 2002, Sheriff Deatrick took office and Ridenour was replaced. However, Ridenour remained assigned to the first shift and did not consider the loss of rank to be a demotion. Ridenour testified that at some later point, he moved back to second shift, but does not recall why he made the move.

It is unclear from the record when the then current jail commander (Ray Byrne) left the Sheriff's Department, but at that time, Sheriff Deatrick persuaded Ridenour to become jail commander for a three month period. As jail commander, Ridenour returned to the first shift. When his three month period as jail commander was over, Ridenour asked Sheriff Deatrick if he could become the first shift transport officer; that request was granted. The rate of pay as a transport officer was the same as that of a regular corrections officer.

Ridenour spent two months as a transport officer, beginning in August of 2004. In late September 2004, Ridenour was transferred to the second shift and Officer Stanley Washnock was moved into the first shift transport officer position so that Officer Washnock could be better supervised. Ridenour did not receive any increase or decrease in his pay upon moving shifts and he remained on second shift until he left the Sheriff's Department in October 2004.

Ridenour's sister, Mary Ward ("Ward"), filed a complaint of sexual harassment with the EEOC in November, 2003. Ridenour testified at his deposition that he was not aware of Ward's specific allegations, nor could he remember if he told the EEOC investigator, Kim Anderson ("Anderson"), anything about Ward's complaint. He does remember having a phone conversation with Anderson, although he specifically denied any knowledge regarding when he communicated with her or the EEOC for the first time. Ridenour's deposition reflects his belief that he was going to help the EEOC "catch" members of the Sheriff's Department by recording their voices on an audiotape while participating in acts of retaliation or sexual harassment. According to EEOC records, Ridenour first contacted Anderson on September 20, 2004, and on September 25, 2004, Ridenour filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging that he was retaliated against in violation of Title VII of the Civil Rights Act of 1964. He received a right to sue letter on June 7, 2006.

When Ridenour reported to work, on or about September 29, 2004, he was "interrogated" by a local law enforcement officer. Ridenour referred to this question and answer session as an "interrogation" because it was recorded. The "interrogation" was in regard to an inmate complaint about another Sheriff's Department employee, Lieutenant Barham. According to the complaint, Lieutenant Barham watched a male inmate undress and re-dress upon the inmate's release from jail. The inmate complained to Ridenour, who instructed the inmate to go through the proper channels. Ridenour suffered no penalties, criminal or otherwise, as a result of the "interrogation."

Ridenour resigned from the Sheriff's Department on or about October 5, 2004.

### III. Legal Conclusions

#### A. Ridenour's Failure to Comply with Rule 56(e)

The findings of fact in this Entry are based almost exclusively on the Sheriff's Department's version of events. Ridenour has opposed the motion for summary judgment with a narrative account of his activity, though this is not an affidavit. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985) ("'An affidavit is a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath.'") (*quoting Farm Bureau Mut. Auto Ins. Co. v. Hammer*, 83 F.Supp. 383, 386 (W.D.Va.), rev'd. on other grounds, 177 F.2d 793 (4th Cir. 1949), cert. denied, 339 U.S. 914 (1950)). Ridenour did in fact sign his Memorandum and Surreply with the language "I also certify and swear that the information I have responded to in this document is true to the best of my knowledge." However, this language does not meet the requirements of 28 U.S.C.A. § 1746, which requires that the person submitting a statement, which must be supported by a sworn declaration to substantially state in writing, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).  (Signature)." *See Gilty v. Village of Oak Park*, 919 F.2d 1247, 1255 n.13 (7th Cir. 1990) (explaining that statements that are "neither notarized nor made under penalty of perjury [do] not comply with Rule 56(e) . . . . As such, we can simply ignore them."). To the limited extent that Ridenour did cite to his deposition transcript, that testimony was considered if it was available on the record. "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003) (citing cases). Ridenour's response does not conform to the requirements of Rule 56(e), it is thus inadequate to support the existence of a genuine issue of fact, and does not expand in any fashion the evidentiary basis on which the motion for summary judgment rests.

#### B. Retaliation Claim

To survive summary judgment on a retaliation claim "[u]nder the direct method, a plaintiff must show (1) []he engaged in statutorily protected activity; (2) []he suffered an adverse employment action taken by the employer; and (3) a causal connection between the two." *Kodl v. Board of Educ. School Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007) (*Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)). "Under the indirect method, plaintiff must show that he (1) engaged in statutorily protected expression, (2) met the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected expression." *Kodl*, 490 F.3d at 562 (*citing Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). "Absent direct evidence of retaliation, failure to satisfy any element of the *prima facie* case proves fatal to the employee's retaliation claim." *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir.), *cert. denied*, 537 U.S. 820 (2002).

Ridenour does not state whether he attempts to establish his *prima facie* case under the direct or indirect method. However, his retaliation claim fails under either theory. Ridenour has no evidence that any of his work conditions were caused by his filing a complaint with the EEOC

or based on his alleged assistance in providing information to the EEOC related to their investigation of Mary Ward's complaint. Ridenour can not show that his assistance with Mary Ward's investigation lead to retaliation because he is unclear about what correspondence he had with the EEOC and when such correspondence took place. There is no evidence that the Sheriff's Department was even aware of the fact that he had spoken with the EEOC investigator by phone. In addition, he was granted the transfer from Jail Superintendent to transport officer which he requested in August 2004, approximately nine months after his sister filed her EEOC complaint in November 2003.

Ridenour filed his complaint with the EEOC on September 20, 2004, less than one month before his resignation. Ridenour makes no allegation of shift changes or any other retaliatory conduct after September 20, 2004. He does claim that he was interrogated by a law enforcement officer in connection with an inmate complaint against another officer, but this interrogation into another officer's conduct did not result in any adverse action against him. Moreover, even if Ridenour feared an adverse action against him arising from this interrogation, he cannot show "that a reasonable employee would have found the challenged action materially adverse." *Burlington Northern and Santa Fe Railway Company v. White*, 126 S. Ct. 2405, 2415 (2006).

To establish an adverse employment action, the employee must be able to show a quantitiative or qualitative change in the terms and conditions of employment. *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 534, 532 (7th Cir. 2003). The adverse employment action must be materially adverse, not merely an inconvenience or a change in job responsibilities. *Griffin v. Potter*, 356 F.3d 824 at 829 (7th Cir. 2004) Only transfers or changes "that lead to significantly diminished responsibilities and substantially changed working conditions can be retaliatory actions." *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003).

Ridenour is unable to demonstrate that he suffered a single adverse employment action. At his deposition, Ridenour testified that the retaliation took the form of people "carrying on, playing round, cutting up, [and] teasing" which he viewed as a security risk. These complaints are insufficient to establish an adverse employment action, although these allegations describe Ridenour's co-workers as immature and irresponsible, the conduct was merely an inconvenience and did not change the conditions of his employment. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe Ry. Co. v. White,* 126 S.Ct. 2405, 2415 (2006).

Ridenour asserts that he was retaliated against when he was transferred from first shift transport officer to second shift corrections officer. He considered the transport officer position, in which he would transport the inmates, to be the most desirable position and saw it as a stepping stone to a road officer position. It is a position with limited supervision and very little time is spent in the jail. However, the second shift corrections officer stays in the jail, supervises inmates within the jail and books offenders in and out. He admits that there was no decrease in pay with this shift change. Further, he admits that he was promoted to jail commander, complete with a pay raise, mid-way through the time period he complains of, although this was a position he did not want.

Ridenour's shift change does not constitute an adverse employment action. This change in positions cannot be said to have significantly diminished his responsibilities or substantially changed his working conditions. In both positions Ridenour was responsible for the security and safety of the prisoners. Neither position appears to have involved the supervision of other

employees and both positions received the same rate of pay.  Ridenour's personal preference to have generous movement in and out of the jail is not sufficient to show a qualitative change in his conditions of employment. In addition, even if Ridenour could show that this transfer was an adverse employment action there is no evidence that it was in retaliation for his participation in an EEOC investigation and not because of the Sheriff's Department's staffing needs. Further, Ridenour does not name any other similarly situated employees who did not engage in statutorily protected expression and who were treated more favorably.

For these reasons, Ridenour has failed to establish a *prima facie* case of retaliation.

## IV.  Conclusion

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *DeNovellis v. Shalala,* 124 F.3d 298, 305-06 (1st Cir. 1997) (internal quotation omitted).  "Without a *prima facie* case, the plaintiff cannot withstand summary judgment." *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1261 (7th Cir. 1993), *cert. denied*, 511 U.S. 1005 (1994). Here, Ridenour's retaliation claims are not supported by evidence that establishes a *prima facie* case. Accordingly, the Sheriff's Department's motion for summary judgment, filed on January 1, 2007, must be **granted.**

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 09/28/2007

John Daniel Tinder, Judge
United States District Court